## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JILL ALWARD,** <br> **Plaintiff** <br><br> **v.** <br><br><br> **DTG HOLDINGS, INC.** <br> **d/b/a ACCESS RECEIVABLES MANAGEMENT,** <br> **Defendant** | ) **CIVIL ACTION** <br> ) <br> ) **COMPLAINT** <br> ) <br> ) <br> ) <br> ) <br> ) **SEPTEMBER 11, 2009** <br> ) |

## COMPLAINT

### I. INTRODUCTION

1.  This is a suit brought by a consumer who has been harassed and abused by Defendant collection agency. This action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA").

### II. PARTIES

2.  The plaintiff, Jill Alward, is a natural person residing in Branford, Connecticut.

3.  The defendant, DTG Holdings, Inc. d/b/a Access Receivables Management ("Access") is a Maryland corporation with its headquarters in Towson, Maryland, and it is licensed by the Connecticut Department of Banking as a Consumer Collection Agency.

### III. JURISDICTION

4.  Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331.

5.  This Court has jurisdiction over Access, because it engages in debt collection activities within Connecticut.

6.  Venue in this Court is proper, because the Plaintiff is a resident of Connecticut and the acts complained of occurred in this state.

## IV. FACTUAL ALLEGATIONS

7.  On or about September 22, 2008, Access sent a notice to Plaintiff in which it was attempting to claim a consumer debt that was claimed to be owed by Electric Insurance for automobile insurance.

8.  Shortly afterwards, a collector employed by Access who identified herself as "Kathy" called Plaintiff.

9.  Plaintiff informed Kathy that she had cancelled the insurance policy with Electric Insurance and had obtained substitute insurance with another carrier.

10. Plaintiff was in the hospital during the time of this call, and she became upset and handed the telephone to her mother, who continued the call.

11. Kathy told Plaintiff's mother that Kathy should forward proof of the new insurance to Access.

12. Upon her release from the hospital, and within 30 days of her receipt of the first written notice of the debt sent by Access, Plaintiff sent a fax with proof of insurance to Kathy's attention at Access.

13. Plaintiff's mother subsequently spoke with Kathy, who confirmed that she had received the fax and that she would forward it to Electric Insurance, and that Kathy would advise if there was anything else required for Plaintiff to dispute this debt.

14. On or about March 17, 2009, Access sent a new collection letter to Plaintiff without having responded to Plaintiff's dispute of the debt or otherwise providing verification of the debt to the Plaintiff.

15. Upon receiving the notice, Plaintiff called Kathy and asked her to explain why they were attempting to collect the debt after she had sent proof that she had obtained substitute insurance.

16. Kathy responded that the information had been forwarded to Electric Insurance in October 2008 but that Electric Insurance had misplaced the documents. She requested that Plaintiff re-fax the proof of insurance.

17. During this second conversation, Plaintiff asked Kathy whether this account was being reported to the collection bureaus.

18. Kathy responded that, after Plaintiff had disputed the account in September, that the account had been put on "hold," and that it was not being reported to the bureaus.

19. Plaintiff resubmitted the proof of insurance to Kathy at Access by facsimile on April 10, 2009.

20. Without having provided any response to Plaintiff's dispute of the debt or otherwise verifying the debt to the Plaintiff, Kathy began in late May or early June to call Plaintiff's cell phone on a daily or almost daily basis in an attempt to collect this debt.

21. On or about June 15, 2009, Access sent a third letter to Plaintiff in an attempt to collect the debt in which it stated that the account was being reported "to the credit bureau."

3

22. On or about June 30, 2009, Plaintiff sent Access a letter by facsimile in which she repeated her position that the debt was disputed, requested a copy of any contract showing that she owed the debt, and requested that Access stop all collection activity until it could furnish that information.

23. On or about August 4, 2008, Access sent another collection letter to the Plaintiff.

## V. COUNT ONE

### Fair Debt Collection Practices Act

24. Access violated the Fair Debt Collection practices act in one or more of the following respects:

   a.     By failing and refusing to respond to Plaintiff's request for verification of the claimed debt;

   b.     By continuing to collect on the debt following Plaintiff's timely notice that she disputed the debt without having provided verification of the debt;

   c.     By making false statements concerning the status and amount of the claimed debt;

   d.     By continuing to collect on the claimed debt after receiving a written request that it cease doing so;

   e.     By making false and inconsistent statements regarding whether the account would be reported to credit bureaus pending its investigation of Plaintiff's dispute;

   f.     By threatening to report the account to the credit bureaus when it knew the account was disputed; and

4

g.    By making false, deceptive, and inconsistent statements

concerning the status of the investigation of the dispute.

25. For Access's violations of the FDCPA as described above, the Plaintiff is

entitled to recover her actual damages (including damages for aggravation and

emotional distress related damages), statutory damages of $1,000.00, and reasonable

attorney's fees, pursuant to 15 U.S.C. § 1692k.

WHEREFORE, the Plaintiff prays for the following relief:

Monetary damages related to Plaintiff's emotional distress; actual damages, statutory
damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k and such other
relief as this Court deems appropriate.


PLAINTIFF, JILL ALWARD


By: _____

    Daniel S. Blinn, ct02188
    Matthew W. Graeber, ct27545
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408; Fax. (860) 571-7457